## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 7, 2019

Lyle W. Cayce
Clerk

No. 18-50402

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

FELIPE VINAGRE-HERNANDEZ,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, COSTA, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Felipe Vinagre-Hernandez appeals his guilty verdict and sentence for aiding and abetting the possession of marijuana in the amount of more than 100 kilograms but less than 1,000 kilograms, with intent to distribute. He challenges the sufficiency of the evidence and the application of the Speedy Trial Act.

I.

A border patrol agent, observing the West Texas desert through an infrared device called a Recon 3, saw six individuals carrying backpacks that appeared to be over half their body size. The agent called for backup and was joined by another agent and his dog. The agents lost sight of the six figures for

a time and went to look for them. When the agent and the dog arrived at the area where they had seen the six people, they found tracks, which they followed and came upon the group, who scattered as the agent and the dog approached. One member of the group, Sergio Reynoso-Montes (Reynoso), remained behind and was found with the backpacks, which were filled with bundles of marijuana, later determined to weigh 320.4 pounds (145 kilos). The "backpacks" were actually sugar sacks painted black to camouflage them. Additionally, the agent found small bags filled with personal items and supplies for the trip, known as "tricky bags."

When the group of five (excluding Reynoso) fled, they fanned out and the agents lost sight of them. Over the radio, it was heard that some of the group turned south. Several agents pursued the fleeing group with flashlights. One agent continued to watch through the Recon 3, eventually spotted one person approximately 300 yards from where the marijuana had been found and alerted the other agents. The agent with the dog found the lone person, Felipe Vinagre-Hernandez (Vinagre), who was crouched down and appeared to be trying to hide. He was located about a mile from where the marijuana was found and was not carrying a tricky bag.

Reynoso testified to Vinagre's involvement with the group of six. Reynoso said that a man named "Xochi" recruited him, bought him "fine line" boots, and brought him and several other men, including Vinagre, to San Antonio al Bravo. He claimed that he and Vinagre were both given bags to carry into the United States, although he also testified that he did not know that they were filled with marijuana. Reynoso testified that everyone was wearing the same type of "fine line" boots that "Xochi" had bought Reynoso. Both Reynoso and Vinagre were wearing fine line boots when they were arrested, as was a third member of the group who was arrested later. Additionally, the tracks that the

agents found indicated that all six of the individuals were wearing the same type of boots.

Vinagre denied being part of or traveling with the group and claimed to have met Reynoso for the first time when they were detained together. He testified that he was traveling with two guides who were supposed to deliver him to Salt Lake City. He had traveled by bus from Mexico City to Ojinaga, where one of the people he was with bought him shoes. He claimed the guides were supposed to return to Mexico and Vinagre's friend in Salt Lake City was going to send them money. Vinagre also mentioned that his friend was going to send the money to a "coyote." When asked what the coyote's name was, Vinagre said he only remembered a person named "Xochi."

Felipe Vinagre-Hernandez was arrested on May 11, 2017. He was indicted on June 13, 2017. At that time, he was charged with aiding and abetting the possession of marijuana in the amount of more than 100 kilograms but less than 1,000 kilograms, with intent to distribute. He pleaded not guilty. The jury found him guilty. The district court sentenced him to 60 months' imprisonment, followed by 5 years of supervised release. He timely appealed on May 10, 2018.

## II.

When this court addresses an appeal regarding the sufficiency of the evidence, it is with "substantial deference to the jury verdict." *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc). All "weight and credibility assessments lie within the exclusive province of the jury." *United States v. Barakett*, 994 F.2d 1107, 1110 (5th Cir. 1993). The court of appeals "does not re-weigh the evidence or assess the credibility of the witnesses." *United States v. Moncada,* 70 F. App'x 198, 198 (5th Cir. 2003). Therefore, we consider all "evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the verdict and determine whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 29 F.3d 953, 958 (5th Cir. 1994).

Possession of marijuana with intent to distribute is established when "(1) the defendant knowingly possessed a controlled substance; (2) the substance was in fact marijuana; and (3) the defendant possessed the substance with the intent to distribute it." *United States v. DeLeon*, 247 F.3d 593, 596 (5th Cir. 2001). "The elements of possession with intent to distribute may be established by circumstantial evidence." *United States v. Gonzales*, 121 F.3d 928, 936 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010)." *See United States v. Mills*, 843 F.3d 210, 217 (5th Cir. 2016). The first factor, knowing possession, can be "inferred only if knowledge is indicated by additional factors, such as 'circumstances evidencing a consciousness of guilt on the part of the defendant.'" *United States v. Gibson*, 963 F.2d 708, 710–11 (5th Cir. 1992) (quoting *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988)). Other factors that can show knowledge include "inconsistent stories," "lack of knowledge of the name of the true owner," and "implausible explanations for one's travels." *Id.* "[I]ntent to distribute may be inferred from a large quantity of illegal narcotics and the value and quality of the drugs." *Gonzales*, 121 F.3d at 936.

Aiding and abetting such an enterprise can be established by showing that "the defendant (1) associated with the criminal enterprise, (2) participated in the venture, and (3) sought by action to make the venture succeed." *DeLeon*, 247 F.3d at 596. In order "[t]o prove association, the evidence must show that the defendant shared the criminal intent of the principal. To prove participation, the evidence must show that the defendant committed an overt act that assisted in the success of the venture. Mere presence and association alone are insufficient to sustain a conviction for aiding and abetting, however,

they are factors to be considered." *United States v. Lindell*, 881 F.2d 1313, 1323 (5th Cir. 1989) (citation omitted).

The evidence viewed in the light most favorable to the verdict was sufficient for a reasonable trier of fact to convict. Reynoso testified that Vinagre was part of the group that had all been recruited by a person named "Xochi." Although Vinagre initially denied knowing anyone named "Xochi," he later mentioned the name when he was asked about the coyote. Everyone, including Vinagre, was wearing the same "fine line" boots that "Xochi" had purchased for Reynoso. Although fine line boots are not necessarily only worn by those trafficking drugs, the agents testified that it would be very unusual for an entire group of people travelling together without narcotics to all be wearing the same fine line shoes. The government pointed out that it would make sense for Vinagre to be found heading the opposite direction, since the individuals spotted (besides Reynoso) scattered when they encountered the immigration agents. Additionally, Vinagre did not have a tricky bag of supplies which, the agents testified, would have been expected had he been travelling alone across the desert as he said he was.

More specifically, the evidence was sufficient to provide a reasonable inference that Vinagre knew that he was carrying marijuana. Six individuals were spotted carrying large backpacks. Based on the size and camouflaged nature of the backpacks and the fact that everyone had to carry one, the jury could reasonably infer that Vinagre knew what was in the backpacks. Additionally, "intent to distribute may be inferred from a large quantity of illegal narcotics and the value and quality of the drugs." *Gonzales*, 121 F.3d at 936. Giving deference to the findings of the jury and considering all evidence in the light most favorable to the verdict, the evidence was sufficient for a reasonable trier of fact to find the essential elements of the charge.

No. 18-50402

III.

This court reviews "interpretations of the [Speedy Trial Act] *de novo*," while facts are accorded "clear-error deference." *United States v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002).

The Speedy Trial Act requires that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. §3161(b). Certain periods of time are excluded from the calculation of the thirty days, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* at §3161(h)(1)(D). The Speedy Trial Act does not lay out a method for computing time, so we turn to Federal Rule of Criminal Procedure 45, which applies to "computing any time period . . . in any statute that does not specify a method of computing time." FED. R. CRIM. P. 45(a). This rule provides that we do not count "the day of the event that triggers the period," but we do count "the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *Id.* at 45(a)(1)(A) and (C).

Vinagre was arrested on May 11, 2017, which was a Thursday. Because that was the day that triggered the 30-day limit, we exclude it and begin counting from the next day. Day 30 is therefore June 10, 2017, which was a Saturday. So, the first non-weekend day is June 12, 2017, a Monday. The indictment was filed on June 13, 2017, one day beyond the 30-day limit. However, on May 12, 2017, the government filed a Motion to Detain. On May 19, 2017, a hearing on the motion was held and the court entered an order disposing of the motion. The government therefore contends that the time

No. 18-50402

spent on this motion should be automatically excluded from the 30-day limit. 18 U.S.C. §3161(h)(1)(D).

Vinagre argues that a procedural distinction should be drawn between pretrial motions and motions he terms "pre-indictment motions." However, there is no precedent or reason to create this distinction regarding motions for pretrial detention. Multiple circuits have found the phrase "any pretrial motion" to be quite expansive. 18 U.S.C. §3161(h)(1)(D). This Circuit has stated that "the Speedy Trial Act explicitly excludes periods of delay resulting from *any* pretrial motion and we have held that the tolling mandated by subsection (F) is all but absolute." *United States v. Harmon*, 46 F.3d 66, *5 (5th Cir. 1995) (cleaned up).[1] In *United States v. Gonzalez-Rodriguez*, in a discussion about oral versus written motions, we assumed that a motion for detention was a pretrial motion and that it tolled the Speedy Trial Act clock. 621 F.3d 354, 368-69 (5th Cir. 2010). The Eighth Circuit has specifically held that motions for detention are included and underscored the breadth of the provision: "'Motions excludable under subsection (F) include *any pretrial motion* and are not limited to those motions enumerated' in Federal Rule of Criminal Procedure 12(b)(2)." *United States v. Moses*, 15 F.3d 774, 776–77 (8th Cir. 1994) (quoting *United States v. Hohn*, 8 F.3d 1301, 1305 (8th Cir. 1993)). The Sixth Circuit has also excluded motions for pretrial detention from the 30-day limit. *United States v. Bowers*, 834 F.2d 607, 609 (6th Cir. 1987), *abrogation on other grounds recognized by United States v. White*, 920 F.3d 1109, 1111 (6th Cir. 2019).

Finding no reason to create a new procedural distinction which would not exclude the time spent on the motion for detention, Vinagre's Speedy Trial Act claim fails on the merits.

---

[1] Unpublished decisions issued before 1996 are precedential. *See* 5th Cir. R.47.5.3.

No. 18-50402

IV.

For the aforementioned reasons, this court AFFIRMS the decision of the district court.