# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2019

Lyle W. Cayce
Clerk

No. 17-20541

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JUSTICE DANIEL;
LETRISHIA A. ANDREWS, also known as Letrishia Ann Andrews,
also known as Letrishia Andrews Daniel,

Defendants–Appellants.

\* \* \* \* \*

No. 17-20543

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

FOLARIN H. ALABI,
also known as Folarin Henry Alabi, also known as Henry,

Defendant–Appellant.

Appeals from the United States District Court
for the Southern District of Texas

No. 17-20541

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Folarin Alabi, Justice Daniel, and Letrishia Andrews were convicted of crimes related to their involvement in a marriage-fraud conspiracy. They appeal, raising issues regarding their convictions and sentences. We affirm.

I.

Co-conspirators recruited U.S. citizens to marry Nigerian nationals so that the Nigerians could obtain legal immigration status. U.S. Citizenship and Immigration Services ("CIS") uncovered the conspiracy and, together with the Department of Homeland Security ("DHS"), investigated.

CIS Officers Anna Lam and Marva Hebert reviewed the files for Daniel and others and determined that their marriages to U.S. citizens were fraudulent. The investigation included examination of immigration petitions, applications, documentation, pictures, when and with whom the alien entered the United States, when the couple got married, when they applied for immigration benefits, their ages, whether they were living together, and whether the couple had children together or with someone else during the marriage. DHS Agent Ramon Oyegbola conducted a second investigation and agreed that the marriages were fraudulent, forming that judgment after surveilling the suspected individuals' residences, examining documents, and interviewing the suspects and other connected people.

Alabi was charged with two counts of aiding and abetting marriage fraud in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2. The count that proceeded to trial charged that Alabi had aided and abetted the marriage of Daniel for the purpose of evading U.S. immigration law. Daniel was charged with one count of marriage fraud in violation of 8 U.S.C. § 1325(c). Andrews was

2

No. 17-20541

charged with one count of aiding and abetting marriage fraud in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2, one count of theft of government money in violation of 18 U.S.C. § 641, and two counts of making false statements related to Supplemental Nutrition Assistance Program benefits in violation of 8 U.S.C. § 1001(a)(3). All three defendants were also charged with conspiracy to commit marriage fraud in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 371.

II.

After a joint trial, the jury convicted on all counts. The district court sentenced Alabi to 18 months' imprisonment and one year of supervised release ("SR"); and Andrews to 24 months' imprisonment, three years of SR, $5629 in restitution, and a $500 special assessment, and imposed, among others, a special condition of SR requiring her "not knowingly [to] purchase, possess, distribute, administer, or otherwise use any psychoactive substances, including synthetic marijuana or bath salts, that impair a person's physical or mental functioning, whether or not intended for human consumption, except as with the prior approval of the probation officer."

Alabi (1) challenges the sufficiency of the evidence to support the verdict that he conspired to commit marriage fraud and aided and abetted marriage fraud and (2) contends that the district court erred in denying his proposed jury instruction "that would [have] require[d] the jury to find that [he] intended to evade the immigration law at the time the marriage was entered." Daniel avers that the court erred in refusing to sever his case from Andrews's. Andrews maintains that the court erred in imposing the psychoactive-substances special condition.

3

No. 17-20541

III.

A.

Alabi asserts that "[t]he evidence was insufficient to prove that [he] knowingly entered the conspiracy to commit immigration fraud or to aid and abet immigration fraud."  He maintains that neither the testimony of Anisha Gable, another co-conspirator, nor the immigration agents' testimony, including the evidence of red flags indicative of marriage fraud that were present in Daniel's marriage, supported that Alabi intended to join the conspiracy or knew of Daniel's and Andrews's intent to evade the immigration laws by marrying.  Alabi attacks Gable's testimony as uncorroborated and circumstantial and therefore insufficient to support the inference that he had the requisite knowledge and intent to join the conspiracy.  He also rehashes impeaching evidence against Gable.

Alabi repeatedly mentions his view that absent evidence he received money to introduce a U.S. citizen to a Nigerian for marriage purposes, the requisite intent is not shown.  Alabi further maintains that "[t]he indicators of fraud discovered by investigators . . . were false statement and altered documents that were submitted after the marriage," but "there was no evidence that [he] had any involvement or knowledge" of those documents when the marriage was entered into.  He urges that "there was no evidence that [he] was involved with submitting documents connected to any of the marriages in this case or that [he] instructed or directed others about how to submit these documents that were determined to be indicative of fraud."  Consequently, "[t]he evidence was . . . insufficient to support an inference that Alabi knew about the conspiracy and intentionally joined the conspiracy."

Regarding his conviction for aiding and abetting marriage fraud, Alabi contends that the evidence was insufficient "because there was no evidence

4

No. 17-20541

that he actively participated in Daniel's marriage for the purpose of evading the immigration laws." He denies that the evidence demonstrated "that he shared Daniel['s] intent to violate the immigration laws."

1.

"We review challenges to the sufficiency of the evidence de novo" but are "nevertheless highly deferential to the verdict." *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017) (internal quotation marks and citation omitted). "[W]e consider all evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vinagre-Hernandez*, 925 F.3d 761, 764 (5th Cir. 2019) (internal quotation marks and citation omitted). "[A] defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

2.

"To prove a conspiracy under 18 U.S.C. § 371, the government ha[s] to prove (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Ongaga*, 820 F.3d 152, 157 (5th Cir. 2016) (citation omitted). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collocation of circumstances, and knowledge may be inferred from surrounding circumstances." *United States v. Bieganowski*, 313 F.3d 264, 277 (5th Cir. 2002) (cleaned up and citation omitted).

Title 8 U.S.C. § 1325(c) states that "[a]ny individual who knowingly

5

enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both." To prove marriage fraud, the government must show "only that the defendant (1) knowingly entered into a marriage (2) for the purpose of evading any provision of the immigration laws." *Ongaga*, 820 F.3d at 160.

"The federal aiding and abetting statute, 18 U.S.C. § 2, states that a person who . . . aids, abets, counsels, commands, induces or procures . . . the commission of a federal offense is punishable as a principal." *Rosemond v. United States*, 572 U.S. 65, 70 (2014) (internal quotation marks omitted). "[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id.* at 71. The statute "comprehends all assistance rendered by words, acts, encouragement, support, or presence, . . . even if that aid relates to only one (or some) of a crime's phases or elements." *Id.* at 73 (internal quotations marks and citation omitted).

### 3.

The evidence was sufficient to support the verdict that Alabi knowingly entered the conspiracy to commit, and knowingly aided and abetted, marriage fraud. As for the conspiracy to commit marriage fraud, Gable, referring to herself and Alabi as "the arrangers," testified that she and Alabi had arranged about ten to fifteen marriages between U.S. citizens and Nigerian nationals. Gable met Alabi when he and a third party visited Gable's house to appraise her for a sham marriage to a Nigerian, sometime after which they began working together. Alabi was the person who taught Gable how the marriage scheme worked, instructing her how to answer potential questions immigration officials might ask during the interview process, where to obtain documents, and

how to find a judge for the marriages.

Alabi would find the Nigerians, and Gable would recruit the U.S. citizens to marry them. Gable would assist the sham couples in their fraud, showing them where to get a marriage license in the courthouse, taking pictures of the wedding, and obtaining copies of the marriage certificate. Alabi paid Gable to take pictures of the weddings as documentation to be submitted as part of the immigration process. Shakietha Joseph, a U.S. citizen who had previously pleaded guilty of committing marriage fraud by marrying a Nigerian national through the same conspiracy at issue here, corroborated that Alabi was active in the marriage-fraud conspiracy and arranged fraudulent marriages.

As for Alabi's conviction of aiding and abetting marriage fraud, Gable testified that she and Alabi had arranged Daniel's and Andrews's marriage to each other. Alabi recruited Daniel, Daniel and Andrews met and agreed to get married, and Daniel agreed to pay Andrews $5500 in return for getting his U.S. citizenship. Daniel and Andrews married on June 14, 2013. They did not cohabitate, but they did file the necessary immigration documents to obtain U.S. resident status or citizenship and attended an immigration interview.

Viewing this evidence and all inferences reasonably drawn therefrom in the light most favorable to the verdict, a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of conspiracy to commit marriage fraud and aiding and abetting Daniel's marriage fraud. Faced with that evidence, Alabi nevertheless contends that it is insufficient to support his conviction. Each of his challenges fails.

First, contrary to Alabi's contention, because "all of the elements of marriage fraud are satisfied when the defendant enters into the marriage," he did not have to be involved with or know about the fraudulent documents that the sham couples submitted to immigration officials. *Ongaga*, 820 F.3d at 160.

No. 17-20541

Second, neither Gable nor any other witness had to testify directly that Alabi knew the sham couples intended to evade the immigration laws. The jury was entitled to rely on circumstantial evidence.[1]

Third, Alabi's attempt to undermine Gable's credibility on appeal is unavailing. This court "ha[s] repeatedly stated that the jury is the final arbiter of the credibility of witnesses." *United States v. Seale*, 600 F.3d 473, 496 n.12 (5th Cir. 2010) (citation omitted). The jury convicted Alabi after hearing Gable's testimony and thus made its credibility determination.

## B.

Alabi also contends that the district court erred in denying his proposed jury instruction "that would [have] require[d] the jury to find that [he] intended to evade the immigration laws at the time the marriage was entered into." He explains that "[b]ecause the offense of marriage fraud is complete upon entry into the marriage, the intent to enter the marriage for the purpose of evading the immigration laws must exist when the marriage is entered." Therefore, he protests that "[m]uch of the evidence at trial focused on the submission of documents after the marriage to prove the intent of the parties at the time they entered the marriage," so by not giving Alabi's proposed instruction, the court "hindered [his] ability to present his defense to the charges that he did not possess the requisite intent to violate the marriage fraud statute."

Alabi reiterates that "[t]he evidence against [him] was limited to the uncorroborated accomplice testimony of . . . Gable" and documents submitted after Daniel and Andrews entered the sham marriage. Therefore, the district court's alleged error in not giving his proposed jury instruction was not

---

[1] *See United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014) ("Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence." (citation omitted)).

harmless, he says, because it "hindered [his] ability to mount a defense . . . and created a risk that juror[s] would place undue weight on the evidence of events after the marriages were entered into [to] determine whether Alabi had the requisite intent to violate the statute." Alabi states that the district court erroneously denied his instruction that "was a correct statement of the law and was relevant to the central issue" of the case, and thus "prejudiced [his] ability to present his defense."

### 1.

"We review a challenge to jury instructions for abuse of discretion, affording the trial court substantial latitude in describing the law to the jurors." *United States v. Ortiz-Mendez*, 634 F.3d 837, 839 (5th Cir. 2011) (internal quotation marks and citation omitted). We examine "whether the charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them." *Id.* (citation omitted). A district court reversibly errs in refusing to give a defendant's proposed instruction "where (1) the requested instruction is substantially correct; (2) the requested issue is not substantially covered in the charge; and (3) the instruction concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *Id.* (internal quotation marks and citation omitted).

### 2.

Alabi fails to overcome his substantial burden to demonstrate that the district court abused its discretion in denying his proposed jury instruction. Contrary to Alabi's contention, the court's instructions, as a whole, were a correct statement of the law and plainly instructed jurors regarding the principles of the law applicable to the factual issues confronting them.

Title 8 U.S.C. § 1325(c) requires the government, to convict of marriage

fraud, to prove beyond a reasonable doubt that the defendant "knowingly enter[ed] into a marriage for the purpose of evading any provision of the immigration laws." The instructions charged the jury that to convict Alabi of conspiracy to commit marriage fraud and aiding and abetting marriage fraud, it needed to find "that a noncitizen knowingly married a United States citizen; and . . . that the marriage was knowingly entered into for the purpose of having the noncitizen evade a provision of the immigration laws of the United States." The court also explained that "knowingly" "means that the act was done voluntarily and intentionally, not because of mistake or accident." The instructions therefore "fairly and adequately cover[ed] the issues presented by the case," and the court properly declined to accept Alabi's proposed instruction because the charge was already included in the instructions.[2]

Alabi nevertheless asserts that we should reverse because the alleged error "seriously impaired [his] ability to effectively present a given defense" and was not harmless. *Ortiz-Mendez*, 634 F.3d at 839 (citation omitted). Alabi's claims are unpersuasive. The instructions did not seriously impair his ability to present his defense because they were a correct statement of the law that clearly instructed the jurors on the principles of the law applicable to the factual issues confronting them. There is no error, harmless or otherwise.

## IV.

Daniel claims that the district court erred in refusing to sever his case from his co-conspirator Andrews's. He asserts that Andrews was "improperly joined" and that the joint case "prevented him from calling [her] as a witness in his trial because of her significant criminal history as well as her pending

---

[2] *United States v. Dailey*, 868 F.3d 322, 331–32 (5th Cir. 2017) (citation omitted); s*ee also Ortiz-Mendez*, 634 F.3d at 838–40 (upholding a jury instruction similar to the one at issue in this case).

charges." Daniel explains that Andrews "could not testify because she had a significant criminal history that would only be revealed *if* she testified."

Daniel states that the court's refusal to sever prejudiced him because he was unable to call Andrews as a witness. He contends that "instructions or limitations" could not serve to provide "adequate protections" "because no instruction the district court could give the jury would replace [Andrews's] testimony at trial attesting to their relationship." Daniel's right to call witnesses and present a defense, he avers, "clearly outweighs any government interest in judicial economy."

## A.

A defendant asserting that "the district court committed reversible error in denying his request to sever . . . faces a doubly high burden." *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018). "[W]e review the decision not to sever under the exceedingly deferential abuse of discretion standard." *Id.* (internal quotation marks and citation omitted). Furthermore, "as a substantive matter," this court's precedent "does not reflect a liberal attitude toward severance." *Id.* (internal quotation marks and citation omitted). "Severance is an *exception*," *id.*, justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "To promote judicial economy and the interests of justice, the federal system prefers joint trials of defendants who are properly charged in joint indictments," *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002), "particularly in conspiracy cases," *United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995).

"To surmount this heavy presumption," *Ledezma-Cepeda*, 894 F.3d at 690, "a defendant must show that: (1) the joint trial prejudiced him to such

an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration," *United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013) (internal quotation marks and citation omitted). "Generic allegations of prejudice will not suffice." *Ledezma-Cepeda*, 894 F.3d at 690. The defendant must show "specific compelling prejudice." *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007).

"The defendant also must show that the district court's instructions to the jury did not adequately protect him or her from any prejudice resulting from the joint trial." *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012). Even if "the risk of prejudice is high," measures "less drastic" than severance, "such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. "[I]n conspiracy cases we generally favor specific instructions over severance," *Ledezma-Cepeda*, 894 F.3d at 690, because "juries are presumed to follow the instructions given to them by the district court," *Owens*, 683 F.3d at 100. Consequently, defendants "must identify specific instances of prejudice unremedied by limiting instructions." *Ledezma-Cepeda*, 894 F.3d at 690. "To obtain a severance based on the desire to have a co-defendant testify in his defense, a defendant must establish: (1) a bona fide need for the co-defendant's testimony; (2) the substance [and] . . . (3) . . . exculpatory effect of the testimony; and (4) that the co-defendant actually would testify if the trial were severed." *Snarr*, 704 F.3d at 397.

## B.

Daniel is incorrect. He exaggerates the import of Andrews's testimony, misapprehends her ability to testify in light of her criminal history that would go to credibility, erroneously states that her criminal history could be introduced only if she testified, and fails to demonstrate that he was prejudiced

by the refusal to sever.

Daniel fails to identify specific instances of prejudice unremedied by limiting instructions, so he is unable to surmount his doubly high burden. Daniel urged in the district court, and reasserts on appeal, that the court should have severed his and Andrews's cases because Andrews had been charged with crimes Daniel had not been charged with and because Andrews's "significant criminal history . . . would only be revealed *if* she testified." The court determined, however, that should the government properly admit Andrews's criminal history, "a strong limiting instruction" would "mak[e] clear to the jury that it could only consider the prior convictions for the limited purposes allowed under the rules [of evidence], curing any possible prejudice as a matter of law." The court "note[d] that the government intend[ed] to put on evidence of Andrews's prior convictions to show intent, knowledge, or absence of mistake," contradicting Daniel's contention that the "only" way Andrews's criminal history would be revealed was "*if* she testified."

The district court also concluded that "Daniel [would not] be significantly prejudiced if the severance [was] denied and Andrews refuses to testify" because Daniel and Andrews were going to testify to nearly identical facts about the history of their relationship. Thus, Andrews's decision not to testify "would not leave [Daniel] without an effective defense." He could "testify on his own behalf" or "call other witnesses to . . . corroborat[e] details about his relationship with Andrews." Accordingly, "any prejudice to Daniel [was] insufficient to overcome the strong presumption in favor of trying him alongside his alleged coconspirator." The court did not err.

Furthermore, the district court properly charged the jury with limiting instructions to cure any risk of prejudice, instructions that this court presumes the jury followed:

You must consider each count and the evidence pertaining to it separately. The fact that you may find one defendant guilty or not guilty of any of the counts charged may not control your verdict as to the other counts charged as to the other defendants. The fact that you may find one defendant guilty or not guilty as to one of the counts may not control your verdict on the other counts against that defendant.

The instructions also stated that "[f]or you to find one or more of the defendants guilty of this crime, you must be convinced that the prosecution has proved each of the following elements beyond a reasonable doubt as to that defendant." Daniel has not identified "specific instances of prejudice unremedied by limiting instructions" and therefore is unable to surmount his doubly high burden.

## V.

Andrews claims that the district court erred in imposing a special condition of SR requiring her to "not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances, including synthetic marijuana or bath salts, that impair a person's physical or mental functioning, whether or not intended for human consumption, except as with the prior approval of the probation officer." She asserts that the special condition was "[p]lainly [u]nreasonable" because (1) the district court did not state its reasons for imposing the condition, (2) the "special condition is vague and overbroad" and therefore "a greater deprivation of liberty than is necessary for Andrews under the circumstances," and (3) the "special condition is not reasonably related to any of the pertinent sentencing factors."

## A.

Andrews did not object to the psychoactive-substances special condition. We review unpreserved challenges to special conditions for plain error. *United States v. Scott*, 821 F.3d 562, 570 (5th Cir. 2016). "Relief under the plain-error standard will be difficult to get, as it should be." *United States v. Figueroa-*

No. 17-20541

*Coello*, 920 F.3d 260, 264 (5th Cir. 2019) (per curiam).

To establish plain error, an appellant must show (1) "an error or defect" (2) that was "clear or obvious, rather than subject to reasonable dispute" and (3) that "affected the appellant's substantial rights." *United States v. Smith*, 878 F.3d 498, 503 (5th Cir. 2017) (citation omitted). "This court then has discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Figueroa-Coello*, 920 F.3d at 264. "[A] defendant faces an uphill battle when he seeks to convince us that a modifiable condition of [SR] satisfies the fourth prong's requirements because the modifiable nature of the condition works a less significant deprivation of liberty than a condition which cannot be altered."[3]

## B.

"[D]istrict courts have wide discretion in imposing terms and conditions of [SR]." *United States v. Caravayo*, 809 F.3d 269, 276 (5th Cir. 2015) (per curiam) (internal quotation marks and citation omitted). Subject to three requirements, a court may impose any condition of SR "it considers to be appropriate." 18 U.S.C. § 3583(d).

First, a condition must be "reasonably related" to one of four factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the "adequate deterrence [of] criminal conduct"; (3) the "protect[ion] [of] the public from further crimes of the defendant"; and (4) the "provi[sion] [of] needed educational or vocational training, medical care, or other correctional treatment" to the defendant. *Id.* §§ 3583(d)(1), 3553(a)(1), (2)(B)–(D); *see also United States v. Weatherton*, 567 F.3d 149, 153 & n.1 (5th

---

[3] *United States v. Mendoza-Velasquez*, 847 F.3d 209, 213 (5th Cir. 2017) (per curiam) (cleaned up and citation omitted); *see also* 18 U.S.C. § 3583(e)(2).

No. 17-20541

Cir. 2009).  Second, a condition cannot involve a "greater deprivation of liberty than is reasonably necessary for the purposes" of the last three statutory factors.  18 U.S.C. § 3583(d)(2).  Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission."  *Id.* § 3583(d)(3).  Though a district court must "set forth factual findings to justify special . . . conditions[,] . . . [e]ven without factual finding[s] . . . we may still affirm a special condition if we can infer the district court's reasoning after an examination of the record."  *United States v. Alvarez*, 880 F.3d 236, 240 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3553(c).

## C.

Andrews fails to demonstrate that the district court erred, plainly or otherwise, in imposing the psychoactive-substances special condition.  She first maintains that the condition is invalid because the court imposed it "without stating its reasons."  She claims that nothing in the record reveals "any justification or rationale for [imposing] the condition" and asserts that "it is not entirely clear that the [c]ourt had a truly reasoned basis for its imposition of [the] . . . special condition."  Consequently, the special condition is "a particularly severe deprivation of [Andrews's] liberty in light of [the] scant record."

Though Andrews correctly notes that the district court did not articulate its factual findings, she ignores evidence from which this court may infer that reasoning.  The presentence investigation report ("PSR"), which the court adopted without change, reported that Andrews first used marihuana at fifteen years old, began to smoke two to three marihuana cigarettes a day at seventeen, and had last used the drug in about December 2015.  The PSR also noted that Andrews had never participated in a substance-abuse program and was willing to do so if given the opportunity, implying that she recognized she

16

had a drug problem.

Based on these factors, the PSR recommended the special condition, stating that it was justified "[b]ased on the defendant's admitted history of drug use and her willingness to discontinue the use of drugs" and that it "will assist the defendant in being accountable as she transitions back into society." Consequently, there was sufficient evidence to infer the district court's reasoning for imposing the special condition.

Andrews attacks the special condition as "vague and overbroad." She complains that "[t]he phrase psychoactive substances neither is defined nor is its meaning self-evident," and thus the condition potentially prohibits her from a wide swath of otherwise legal behavior, such as drinking coffee or eating chocolate. She cites out-of-circuit cases analyzing special conditions involving "mood-altering substances" to support her contention that the phrase "psychoactive substances" is ill-defined and thus a greater deprivation of her liberty than is necessary.

Andrews overstates the vagueness of the special condition. The condition's plain language gives explicit examples of substances the court meant, including synthetic marihuana and bath salts. The court further narrowed the special condition to only those psychoactive substances "that impair a person's physical or mental functioning," thereby implicitly excluding mere mood-altering substances like coffee or chocolate. The heading of the section in which this condition was included was "Substance Abuse Treatment, Testing, and Abstinence," adding additional context by which Andrews could reasonably discern the types of substances covered by the special condition. Even if she was confused about what the special condition encompasses, she would be free to contact her probation officer to inquire about the propriety of specific substances or to get permission for prohibited substances.

No. 17-20541

Andrews's reliance on the out-of-circuit cases analyzing mood-altering substances is misplaced. The Seventh Circuit, on which Andrews relies in part, has noted that "[a] better definition for 'mood altering substances' . . . would be 'psychoactive substances that impair physical or mental functioning,'" substantially mirroring the language of the special condition at issue here. *United States v. Kappes*, 782 F.3d 828, 853 (7th Cir. 2015) (citation omitted).

Andrews last contends that the "special condition is not reasonably related to any of the pertinent sentencing factors." She reasons that her offense did not involve substance abuse and was not caused by it, that the record does not contain "medically-grounded findings" that indicate that monitoring her use of psychoactive substances generally "will reasonably deter future fraudulent behavior," and that the special condition is not "related to the need to provide [her] with effective correctional treatment."

Andrews thus focuses her challenge on whether the special condition is reasonably related to one of the four § 3553(a) factors, but her contentions are meritless. The condition is at least reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). As the PSR reported, Andrews had a history of drug abuse, was willing to participate in a substance-abuse program, and impliedly recognized that she had a drug problem. In light of the personal history and characteristics, prohibiting Andrews from knowingly purchasing, possessing, distributing, administering, or otherwise using any psychoactive substances was reasonable and not plain error.

AFFIRMED.

18