# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2023

Lyle W. Cayce
Clerk

_____

No. 21-10708

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Edward Eugene Robinson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-352-2

_____

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Defendant-appellant Edward Eugene Robinson was convicted by a jury on five counts arising from a series of armed robberies of cell-phone stores in the Fort Worth, Texas area. He now appeals his convictions and sentence. We AFFIRM.

## I.

From May through September 2019, Robinson and coconspirators Aaron Hardrick and Ncholeion Hollie cased and robbed multiple Sprint and

T-Mobile stores in the Fort Worth area.  Two of those robberies, committed in June of 2019, are relevant to this appeal.

**A.**

First, on June 14, 2019, Robinson and Hardrick entered a Sprint store in Fort Worth, wearing hoodies, baseball caps, masks, and gloves.  Robinson had a taser, and Hardrick had a gun.  They maintained an open-line phone call with Hollie, who was outside the store on lookout.  Once inside, Hardrick confronted the employee at the front counter, gripping a gun in his waistband, and told her to go to the back of the store and open the safe.  When the employee did not immediately stand up, Hardrick slapped a cell phone from her hand, grabbed her arm, and pushed her to the back of the store. Hardrick removed the gun from his waistband and pointed it at her. Robinson followed Hardrick and the employee to the storage room with a duffel bag in hand.

Once in the room, Robinson got the store keys and locked the front door.  Robinson and Hardrick instructed the employee to open two safes and told her to turn around and face the wall.  After Robinson threatened her with his taser, the employee complied, and Hardrick zip-tied her hands behind her back.  Robinson and Hardrick put all the phones from one of the safes into a duffel bag, and eventually left the store through the back exit.  Fort Worth police later determined that Robinson and Hardrick had stolen $23,257.68 worth of merchandise.

Five days later, on June 19, 2019, Robinson and Hardrick robbed a Sprint store in Bedford, Texas.  Again, Robinson and Hardrick entered the store, where only one employee was present, while Hollie acted as lookout. Hardrick pointed his gun at the employee and pushed her into the back storage room, followed by Robinson holding the duffel bag.  Robinson and Hardrick got the keys from the employee, locked the front door, and told the

employee to open two safes. Though they attempted to zip-tie her, she "did not let them," and they proceeded to remove cell phones from the safe. The employee managed to escape through the back door and began screaming for help. As she ran away, Hardrick chased her, grabbed her by her hair, and hit her in the head with his gun. Both Hardrick and the employee fell to the ground. The employee ran into a neighboring business, and Hardrick returned to the Sprint store. He and Robinson exited through the front door with the duffel bag, having stolen $3,501.97 worth of cell phones.

Robinson, Hardrick, and other unidentified coconspirators later robbed multiple T-Mobile stores in the Fort Worth area on July 7, July 21, and July 23, 2019.

**B.**

Robinson was arrested on September 23, 2019 in Odessa, in the Western District of Texas. He was transferred to the Northern District of Texas, where a federal public defender was appointed to represent him.

On October 16, 2019, Robinson's public defender and Hardrick's counsel filed a joint, unopposed motion to continue the time for the Government to indict. In the motion, the parties noted that the Speedy Trial Act requires that an indictment be returned within thirty days of the defendant's arrest or service with a summons. This meant that, for Robinson and Hardrick, the indictment deadline was to be October 23, 2019. Counsel stated that the Government was "planning to indict both defendants on October 17, 2019," *i.e.*, the following day. The movants sought a forty-five-day extension of the Speedy Trial Act's indictment deadline "to allow time to review discovery, investigate the case, discuss the case and discovery with their clients, and engage in plea negotiations with the government." They contended that "the granting of th[e] continuance would be in the interest of judicial economy, would serve the ends of justice, and would outweigh the

interest of the public in a speedy trial." The magistrate judge granted the motion the next day, setting the deadline to indict as December 9, 2019.

On December 3, 2019—six days before the Government's extended deadline to indict—a grand jury returned an indictment charging Robinson, Hardrick, and Hollie on three counts related to the robberies.

On January 15, 2020, a grand jury charged Robinson with five counts in a superseding indictment: (1) conspiracy to interfere with commerce by robbery, based on the robberies dated June 14, June 19, July 7, July 21, and July 23, 2019, in violation of 18 U.S.C. § 1951(a); (2) interference with commerce by robbery, based on the June 14 robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; (3) using, carrying, and brandishing a firearm during a crime of violence, *i.e.*, the June 14 robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; (4) interference with commerce by robbery, based on the June 19 robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and (5) using, carrying, and brandishing a firearm during a crime of violence, *i.e.*, the June 19 robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.

Throughout 2020, Robinson cycled through multiple lawyers. On November 16, 2020, Robinson through trial counsel filed a motion to dismiss the indictment based on a Speedy Trial Act violation. Robinson asserted that his original public defender did not consult him when she decided to move for a continuance of the time to indict. He pointed to the absence of any "signature or mark" on the motion "indicat[ing] that he has given his express or implied consent to afford the government more time in which to seek formal charges against him." Robinson contended that his Speedy Trial Act rights were therefore violated because his December 3, 2019 indictment came down too long after his arrest.

The district court denied the motion. The court noted that Robinson's counsel had requested an extension of the Government's

deadline to indict and explained that the Speedy Trial Act excludes time "resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel." The court rejected Robinson's assertion that his consent was required for the filing of such a motion.

Shortly before trial, the district court docketed four *pro se* filings it received by mail from Robinson. Among those filings was a "supplemental" motion to dismiss on the basis of purported Speedy Trial Act violations, in which Robinson re-urged his prior motion's assertion that his original public defender moved to continue the indictment deadline without consulting him, and contended that "[i]f not for the additional time given to the government by [counsel]'s motion for a continuance, the very strong likelihood exists that Mr. Robinson would not have been indicted." At a status conference held the same day, the district judge orally denied all of Robinson's *pro se* motions without prejudice.

## C.

Robinson's jury trial lasted from March 8 through March 10, 2021. The Government and defense counsel agreed that the case was about identity—that is, whether Robinson was one of the people who committed the robberies. The Government called a number of witnesses and presented evidence seeking to show that Robinson was among the robbers of the cell-phone stores. The Government's evidence included eyewitness identifications of Robinson, records from Robinson's phone showing contact with his coconspirators during the robberies, police identification of Robinson based on surveillance footage, identification of Robinson's voice on phone-call audio from both robberies, and FBI expert testimony placing Robinson near cell towers in the area of the crime scenes on both June 14 and June 19. The defense did not call any witnesses.

No. 21-10708

At the end of trial, the district judge read the jury charge. As to counts two and four[1]—affecting commerce by robbery—the charge read as follows:

> Title 18, United States Code, Section 1951(a), makes it a crime for anyone to obstruct, delay, or affect commerce by robbery. Robbery means the unlawful taking or obtaining of *or attempting* or conspiring to unlawfully take or obtain personal property from the person or in the presence of another, against her will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to her person or property in her custody or possession.

The jury charge continued:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First:    That the defendant unlawfully obtained *or attempted to obtain* personal property from a person or in her presence, against her will;
>
> Second:   That the defendant did so by means of actual or threatened force, or violence, or fear of injury, immediate or future, to her person or property in her custody or possession; and
>
> Third:    That the defendant's conduct in any way or degree obstructed, delayed or affected commerce or the movement of any article or commodity in commerce.

---

[1] There is no dispute on appeal about the jury instructions on the conspiracy charge (Count 1).

As to counts three and five—using, carrying, or brandishing a firearm during and in relation to a crime of violence—the jury charge instructed as follows:

> Title 18, United States Code, Section 924(c)(1) makes it a crime for anyone to knowingly use, carry, or brandish a firearm during and in relation to a crime of violence.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:
>
> First:    That the defendant committed the crime alleged in Counts Two and Four. *I instruct you that affecting commerce by robbery is a crime of violence*; and
>
> Second:   That the defendant aided and abetted Aaron Hardrick in committing the crime of violence alleged in Counts Two and Four, and knew in advance that Aaron Hardrick would be armed.

On March 10, 2021, the jury returned its verdict, finding Robinson guilty on all five counts: the conspiracy count (Count 1), and the two robberies (Counts 2 and 4) with their respective firearm counts (Counts 3 and 5).

## D.

Robinson was sentenced on July 8, 2021. The district court calculated that Robinson had a total offense level of 35 as to the primary robbery counts (Counts 1, 2, and 4), which, with a criminal history category of IV, resulted in a guideline range of 235 to 293 months' imprisonment. As to the firearm counts (Counts 3 and 5), Robinson faced a mandatory minimum of seven years per count, to run consecutively with other counts. *See* 18 U.S.C. § 924(c)(1)(A)(ii).

No. 21-10708

Robinson sought a downward variance, based on his difficult childhood and family support. The Government sought an upward variance, based on victim impact and a comparison to Hardrick's sentence. The court varied upward, imposing a sentence of 124 months as to Counts 1, 2, and 4, and 84 months as to counts 3 and 5, with all counts to run consecutively, resulting in a total sentence of 540 months. The court also sentenced Robinson to three years of supervised release as to Counts 1, 2, and 4, and five years of supervised release as to Counts 3 and 5, with all counts to run concurrently. The court also ordered restitution.

The district judge explained that an upward variance was warranted "for several reasons." He explained:

> [T]his defendant is a determined recidivist. That is, he has continually engaged in criminal conduct for almost four decades, indeed going back to when he was 14-years-old up to the present time. The only time that his criminal conduct has ever been hindered is during his terms of incarceration. Indeed, even while he was incarcerated the defendant has had numerous disciplinary problems. Additionally, the defendant has went [*sic*] on a spree of robberies which were not considered in the guideline calculations . . . .
>
> . . .
>
> If you look at Mr. Robinson's criminal record, he came out with a criminal history category of IV. However, there were five felonies or other crimes that he committed as an adult that weren't even included in his . . . criminal history category calculations. I think that it's a very good case, indeed the classic case, where the underrepresentation of somebody's criminal history category — at a minimum, his criminal history category to me and his history of violent crimes looks more to me like it should be a category VI, at the very least a category V criminal history. I think it's understated as the way the calculations came up.

No. 21-10708

> I think it's also worth noting that this is one of the most heinous crimes, if not the most heinous crime, that I've had to preside over as a judge, either on the State District Court, as a Federal prosecutor when I used to do criminal work, on the Court of Appeals for the State of Texas, or indeed these last two years presiding over 300 criminal sentencings here in the Northern District of Texas. This is absolutely abhorrent. This defendant has no regard for the law. No regard for the welfare of others or their property.
>
> I think it's also worth noting that this sentence and this variance is necessary and appropriate to avoid unnecessary sentencing disparity with the codefendant, Mr. Hardrick, who received the same sentence. Indeed, you could argue that I could go even higher, considering that all the evidence demonstrated to me that Mr. Robinson was the leader in this spree.

The court stated that the 540-month sentence was sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Robinson objected to the sentence on Eighth Amendment grounds, arguing that the sentence was excessive. The court overruled the objection. Robinson timely appealed.

## II.

Robinson first contends that he suffered a Speedy Trial Act violation because he was indicted more than thirty days after his arrest. We review interpretations of the Speedy Trial Act *de novo* and factual findings for clear error. *United States v. Vinagre-Hernandez*, 925 F.3d 761, 765 (5th Cir. 2019) (citation omitted).

Under the Speedy Trial Act, an indictment or information must be filed within thirty days from arrest or service with a summons related to the

charges.  18 U.S.C. § 3161(b).  When calculating elapsed time under the Speedy Trial Act, courts must exclude "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant *or his counsel*," so long as "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A) (emphasis added).  Moreover, in granting such a continuance, the court must "set[] forth, . . . either orally or in writing, its reasons for [so] finding." *Id.*

Here, because Robinson was arrested on September 23, 2019, his initial indictment deadline was October 23, 2019.  His counsel moved for a forty-five-day continuance of the deadline on October 16, 2019.  The next day, the magistrate judge granted the continuance, for the reasons set forth in counsel's motion and because "the ends of justice served by the granting of [the] continuance outweigh the best interests of the public and the defendant in a speedy trial."  This continuance thus satisfies the statutory criteria for excluding the resulting delay from Robinson's thirty-day Speedy Trial Act period. *Id.*  Accordingly, Robinson's thirty-day clock stopped on October 17, and was to resume in December.  On December 3—with almost a week left to go before expiration of the continued deadline—Robinson was indicted.  His thirty days had not elapsed, and his indictment therefore did not violate the Speedy Trial Act.

Robinson does not dispute that the continuance satisfies the statutory language for exclusion.  He contends instead that the extended time should nonetheless *not* be excluded because his counsel did not consult with him before filing the motion to continue.  This argument is without merit.

First, this contention runs counter to the statutory text of the Speedy Trial Act, which expressly carves out delays resulting from continuances

sought "at the request of the defendant *or his counsel*."    18 U.S.C. § 3161(h)(7)(A) (emphasis added).  The text does not require that counsel obtain her client's consent to seek a continuance.

Second, while this court has not yet addressed this question, every other circuit to have considered the issue has ruled that, for Speedy Trial Act purposes, it is not necessary that the defendant consent to a continuance sought by his counsel.  *See United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013) ("[D]efense counsel has the power to seek a[] [Speedy Trial Act] continuance without first informing his client or obtaining his client's personal consent."); *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013) ("[A] district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its reasons on the record."); *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010) ("[W]here an attorney seeks a continuance without the client's approval, . . . the Speedy Trial Act 'does not require a defendant's consent to the continuance' in order for a judge to be able to grant a motion in furtherance of the ends of justice." (citation omitted)); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("[The defendant's] opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial calculation."); *United States v. Daychild*, 357 F.3d 1082, 1094 (9th Cir. 2004) (excluding time resulting from continuances that were requested by counsel "without [the defendant]'s knowledge or consent"); *cf. United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994) ("The defendant's arguments are disturbing because he would have us order the dismissal of his indictment based on continuances that his own attorney sought."); *United States v. Bryant*, 134 F.3d 364 (Table), 1998 WL 39393, at *3 (4th Cir. 1998) (per curiam) (unpublished) (rejecting defendant's argument that his consent was necessary for a continuance in the Speedy Trial Act context because such a

rule "would put the district court in the precarious position of having to determine whether a defendant's legal counsel or the defendant himself is actually speaking for a defendant"). This court would be alone among courts of appeals in holding that a defendant's consent is necessary for the purpose of obtaining an excludable continuance under the Speedy Trial Act. We join our sister circuits in rejecting such a requirement.

Third, giving effect to a motion by counsel—without requiring consent or acquiescence by the defendant—is consistent with the well-established principle that, "because counsel is the defendant's agent, the defendant 'must accept the consequences of the lawyer's decisions.'" *United States v. Cabello*, 33 F.4th 281, 295 (5th Cir. 2022) (cleaned up) (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)). Indeed, in *New York v. Hill*, the Supreme Court held, in a unanimous opinion, that counsel could effectively waive a defendant's right to a timely trial under the Interstate Agreement on Detainers. 528 U.S. 110 (2000). Noting that even "the most basic rights of criminal defendants are subject to waiver," *id.* at 114 (cleaned up) (citations omitted), and that "[s]cheduling matters are plainly among those for which agreement by counsel generally controls," *id.* at 115, the Court rejected the defendant's argument that his assent was required for waiver. *Id.*; *see also Gonzalez v. United States*, 553 U.S. 242, 250 (2008) ("To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical."). These principles reinforce our conclusion that, for the purposes of excluding time from a defendant's Speedy Trial Act calculation, the defendant is bound by counsel's decision to seek a continuance, and his personal consent is not required.

For these reasons, Robinson's Speedy Trial Act claim fails. The district court did not err in denying Robinson's motion to dismiss the indictment on Speedy Trial Act grounds.

### III.

Robinson also argues that the district court erred in its jury instructions on his § 924(c) charges (Counts 3 and 5). He contends that the court erroneously defined the predicate offense, a "crime of violence," as including *attempted* Hobbs Act robbery. Because trial counsel did not object to the instruction below, this issue is reviewed for plain error.

To establish plain error, a litigant must show that (1) the district court erred, (2) the error was clear and obvious, and (3) the error affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted). If he makes such a showing, this court has the discretion to correct the error if the error seriously affects the "fairness, integrity or public reputation of judicial proceedings." *Id.* (citations omitted).

Section 924(c) imposes criminal penalties against "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The statute defines a crime of violence as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[2]

Here, Robinson was charged with two violations of § 924(c), one pertaining to the June 14 robbery and the other to the June 19 robbery. The predicate "crime of violence" for each violation is the corresponding substantive Hobbs Act robbery, charged in Counts 2 and 4, respectively.

---

[2] The statute also defined "crime of violence" in the alternative as a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). But in 2019, the Supreme Court struck this provision as unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

In charging the jury on Robinson's Hobbs Act robbery counts, the district court correctly instructed that the first element was satisfied if the Government had met its burden to prove that "the defendant unlawfully obtained *or attempted to obtain* personal property from a person or in her presence, against her will." *See* 18 U.S.C. § 1951(a) (imposing criminal penalties on anyone who "obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do.").

Then, on the § 924(c) counts, the district court instructed the jury that the predicate-offense requirement was satisfied if the Government had met its burden to prove that "the defendant committed the crime alleged in Counts Two and Four." The court then said, "I instruct you that affecting commerce by robbery is a crime of violence." The district court thus did not distinguish between completed and attempted robbery.

At the time of Robinson's trial, this instruction was proper under Fifth Circuit case law. In *United States v. Smith*, this court held that "[w]hen a substantive offense would be a crime of violence under 18 U.S.C. § 924(c)(3)(A), an *attempt* to commit that offense is also a crime of violence." 957 F.3d 590, 595 (5th Cir. 2020) (emphasis added) (quoting *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020)). But after Robinson's trial, the Supreme Court took up the question in *United States v. Taylor*, and ultimately rejected this conclusion. 142 S. Ct. 2015 (2022). The Court explained that attempted Hobbs Act robbery has two elements: "(1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* at 2020. "And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* Accordingly, "[w]hatever one might say about *completed*

Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy" the § 924(c) definition of a "crime of violence." *Id.* (emphasis in original).

In light of *Taylor*, the Government here concedes that the instruction to Robinson's jury was clear error and thus satisfies prongs one and two of this court's plain-error review. This is correct, notwithstanding that the law was different at the time of trial. "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *see also United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) (en banc) ("[T]he 'plainness' of the error should be judged by the law at the time of appeal.")

The remaining questions, therefore, are (1) whether the error affected Robinson's substantial rights, and, if so, (2) whether the court should exercise its discretion to correct the error because failing to do so would seriously affect the fairness, integrity or public reputation of the proceeding. *See Puckett*, 556 U.S. at 135. To show that the error affected his substantial rights, Robinson must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *United States v. Jones*, 935 F.3d 266, 272 (5th Cir. 2019) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). Robinson has not made such a showing.

The error here is the district court's failure to distinguish between completed and attempted robbery when instructing on the § 924(c) counts, or to otherwise clarify that attempted robbery is not a "crime of violence" under § 924(c). A review of the trial record indicates that, even if this error were corrected, Robinson still would have been convicted on the § 924(c) counts.

No. 21-10708

At trial, there was no suggestion, through the evidence or arguments, that the robberies at issue were attempted rather than completed. The store clerks from both the June 14 and June 19 robberies (*i.e.*, the two predicates) testified about their respective incidents, from the robbers' entry, to the theft of the merchandise, to their eventual escape. The predicate offenses did not involve aborted, foiled, or otherwise partial robberies. The Government did not state in its closing argument that attempt is sufficient to convict, nor did it otherwise call the jury's attention to this avenue for conviction. Accordingly, the record suggests no possibility that the jury convicted Robinson of Hobbs Act robbery on an attempt theory and therefore a similar impossibility that his § 924(c) convictions rested on such a basis.

On the contrary, the fact that completed robberies occurred was essentially undisputed at trial. The issue was not whether, or how, or to what degree, the stores were robbed, but rather *who did it*. As both parties made clear in their opening statements, the key dispute in the case was identity. Defense counsel said in his opening: "[t]he[se] robberies probably did occur based on what the prosecutor mentioned, but you're not going to be able to put my client at the scene because he's not there." In service of this theory, counsel's cross examination consistently focused on witnesses' identifications of Robinson. In closing, defense counsel pressed this theory home, seeking to cast doubt on the Government's audio, video, and photographic evidence, and telling the jury, "That's not my client leaving the store. Look at it." Our review of the trial record reveals no meaningful challenge to, or dispute about, the events constituting the predicate robberies—much less a dispute going to an "attempt" theory. We see no basis to conclude that the jury may have opted for an avenue to conviction that received no airtime at trial.

While Robinson asserts that "it is not clear" on which theory—attempted or completed—the jury relied, this generalized contention does

16

not suffice to carry his burden to show a reasonable probability that the outcome would have been different if the jury were instructed that attempt does not qualify. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (noting that the difference between a harmless-error inquiry and a plain-error substantial-rights inquiry is that under plain-error review, "[i]t is the defendant . . . who bears the burden of persuasion").[3]

Robinson correctly points out that in multiple cases this court has vacated convictions based on jury instructions that combine valid and invalid predicates. *See, e.g.*, *Jones*, 935 F.3d at 273-74; *United States v. McClaren*, 13 F.4th 386, 413-14 (5th Cir. 2021); *United States v. Hankton*, 51 F.4th 578, 591-94 (5th Cir. 2022). But those cases indeed reinforce that this determination, at least on plain-error review, is case-specific and turns on the underlying predicates as well as the evidence and arguments presented at trial. For example, in *United States v. Jones*, this court vacated § 924(c) convictions because the record demonstrated a reasonable probability that the jury would not have convicted on § 924(c) absent the erroneous instruction that a RICO conspiracy was a crime of violence. 935 F.3d at 273-74. The court pointed out that the invalid predicate (RICO conspiracy) and the valid predicate (controlled-substance conspiracy) were "not coextensive," and that the RICO conspiracy "included a broader range of conduct." *Id.* at 273. The court discussed the government's opening statement and closing argument, which suggested that the RICO conspiracy encompassed conduct beyond the

---

[3] At oral argument, Robinson's counsel offered a more specific theory of why the jury might have convicted based on attempt. The theory involved a jury question regarding the meaning of "personal property from a person or in her presence," and the implications of the fact that the store clerk robbed on June 19 escaped through the back door while the robbery continued. While we are ultimately unpersuaded by the theory, we note that we do not consider it in the first place. The argument was not included in Robinson's briefs, and we do not consider arguments raised for the first time at oral argument. *Jackson v. Gautreaux*, 3 F.4th 182, 188 n.* (5th Cir. 2021) (collecting cases).

drug conspiracy, as well as witness testimony that "described RICO conduct unrelated to the controlled-substance conspiracy." *Id.* The court ultimately found that, while it was a "close question," the appellants had demonstrated plain error because there was a reasonable probability that the jury would not have convicted on § 924 if the invalid predicate were excluded from the verdict form. *Id.* at 274-75. *McClaren* and *Hankton* also involved a RICO-versus-drug-offense problem and cited *Jones* in vacating for plain error. *McClaren*, 13 F.4th at 413-14; *Hankton*, 51 F.4th at 591-94.

This case does not present the same problems. Here, the invalid predicate (attempted robbery) features nowhere at trial—through the evidence, arguments, or elsewhere. It is for this reason that Robinson cannot show a reasonable probability that, but for the error, the outcome of the proceedings would have been different. *See United States v. Montemayor*, 55 F.4th 1003, 1011 (5th Cir. 2022) (declining to vacate a § 924(c) conviction based on an invalid predicate, and distinguishing *Jones* by explaining, "[t]he reason for reversal in *Jones* was that jurors were given two theories of guilt, and some jurors may have accepted only the invalid one," and that because this case presented no such problem, "under plain error review, . . . the substantial rights of the defendants were [not] affected"); *see also United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (finding no reason to vacate a § 924(c) conviction based on the erroneous instruction that conspiracy to commit Hobbs Act Robbery was a valid predicate because "[t]he conspiracy offense and the robbery offense are coextensive, and the conspiracy offense related solely to the robbery offense").

Because Robinson has not shown that his substantial rights were affected by the erroneous jury instruction, he fails plain-error review. We hold alternatively that, even if the error affected his substantial rights, we would not exercise our discretion to correct the error because, for the reasons

No. 21-10708

discussed, the error here did not seriously affect the fairness, integrity or public reputation of the proceeding. *See Puckett*, 556 U.S. at 135.

We accordingly affirm Robinson's convictions despite the error.

**IV.**

Robinson also argues that the district court erred by varying upward based on coconspirator Hardrick's sentence, rather than on national sentencing statistics. He concedes (1) that this issue is subject to plain-error review because he did not object in the district court, and (2) that his argument is foreclosed by our precedent. He is correct on both fronts, and his claim therefore fails.

This court has held that it is plain error for a sentencing court to vary downward based solely on national sentencing statistics. *United States v. Willingham*, 497 F.3d 541, 545-46 (5th Cir. 2007). The court explained in *Willingham* that "[a]lthough the statistics may show a disparity . . . , there is no indication that the disparity is *unwarranted.*" *Id.* at 544. Along similar lines, the court in *United States v. Naidoo* rejected a defendant's argument that his sentence was unreasonable in light of national sentencing statistics. 995 F.3d 367, 383 (5th Cir. 2021). Quoting *Willingham*, the court explained that "national averages of sentences with no details underlying the sentences are unreliable to determine unwarranted disparity." *Id.* (cleaned up) (quoting *Willingham*, 497 F.3d at 544).

In light of this circuit law, the district court did not plainly err in sentencing Robinson without reference to national sentencing statistics. We affirm Robinson's sentence as to this issue.

No. 21-10708

## V.

Finally, Robinson argues that the district court erred by varying upward without a showing that Robinson and Hardrick were similarly situated. He again concedes that this issue is reviewed only for plain error because he did not object in the district court.

Robinson contends that he and Hardrick are "not necessarily similarly situated . . . simply because they each have been convicted of the same offense," and that Hardrick was sentenced for robberies in both Texas and California, while Robinson was only sentenced for Texas robberies. He also asserts that the district court's sentence did not "take into account differences between their total offense levels, criminal history categories, and aggravating factors present for one defendant and not the other." Robinson does not elaborate on what those differences are.

A sentencing court shall consider, among other factors, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Courts may look to codefendants' sentences in assessing the (a)(6) factor. *See, e.g.*, *United States v. Garcia*, 789 F. App'x 410, 413 (5th Cir. 2019) (comparing the defendant's sentence to that of a codefendant and concluding that the two are not similarly situated and thus the disparity between them was not unwarranted.). Here, the only distinction that Robinson identifies between him and Hardrick is that some of Hardrick's convictions were for robberies in California. But this is a distinction without a difference; Hardrick, like Robinson, was convicted on three robbery counts and two related firearm counts. And he, like Robinson, was sentenced to 124 months per robbery count and 84 months per firearm count. Beyond this attempted distinction, Robinson fails to explain in what ways he and Hardrick—who committed the charged robberies together—are not

similarly situated.  He therefore provides this court with no basis for finding an error in the sentencing court's comparison between the two defendants.

Finally, even if there were an error, and even if the error were clear, Robinson has not shown that it affected his substantial rights.  To make this showing, Robinson must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Jones*, 935 F.3d at 272.  The district court made clear that the sentence was also based on Robinson's history of recidivism, as well as his view that Robinson's criminal-history category failed fully to account for his lengthy criminal history, that the crime was particularly "heinous" and "abhorrent," and that the evidence suggested that Robinson was in fact the "leader in this spree." Even without a comparison to Hardrick's sentence, Robinson's upward variance was still supported by the "several [other] reasons" listed by the court.

The district court did not plainly err in varying upward based in part on Hardrick's sentence.  We affirm Robinson's sentence as to this issue.

## VI.

For the foregoing reasons, we AFFIRM Robinson's convictions and sentence.